UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: _____

HALEY BARNETT DACOSTA,

    Plaintiff,

v.

TECHNO SYSTEMS LLC,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, HALEY BARNETT DACOSTA, by and through her undersigned counsel, sues the Defendant, TECHNO SYSTEMS LLC, and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for damages and to remedy violations of the rights of MS. DACOSTA under the Age Discrimination in Employment Act of 1967, as amended, 29 USC § 621, et seq, ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), to redress injuries done to her by the Defendant, TECHNO SYSTEMS, LLC. ("Defendant").

2. The unlawful acts which gave rise to this Complaint occurred within Dade County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

1

## PARTIES

3. At all times material hereto, Plaintiff has been a citizen and resident of Broward County Florida and is otherwise *sui juris*.

4. At the relevant time, Plaintiff was a 40 year old black female from Jamaica, and, as such, Plaintiff is a member of a protected class under the Age Discrimination in Employment Act of 1967, as amended, 29 USC § 621, et seq, ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Florida Civil Rights Act of 1992, as amended ("FCRA"), because the terms, conditions, and privileges of her employment were altered because of her race, gender, and age.

5. Defendant is not a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6. Defendant has, at all times material hereto, employed 20 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with Title VII and the FCRA (42 U.S.C. §2000e(b); Fla. Stat. § 760.02(7)).

7. Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission, which was dually filed with the Florida Commission on Human Relations.

8. Plaintiff's charge was filed within 300 days after the first instance of discrimination occurred.

9. Plaintiff was issued a Notice of Right to Sue on February 27, 2019. This suit is filed in accordance with that Notice and within the applicable ninety (90) day time limitation (a copy of the Notice is attached hereto as Exhibit "A").

10. The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charges.

## **GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

11. Plaintiff was hired as an assistant engineer for the Defendant on December 1, 2015 until she was terminated on September 27, 2018.

12. As an assistant engineer, Plaintiff's primary duties and responsibilities included designing and preparing drafting documentation and other duties associated with AutoCAD, VidCAD and Microsoft office products. Other responsibilities including maintaining contact with clients and assisting the engineering team to prepare all needed drawings and documentation. Plaintiff was qualified to perform these job duties and responsibilities as Plaintiff had prior experience and training.

13. Plaintiff's starting salary was $48,000.00 per year.

14. Just a few months into the Plaintiff's employment, she came the target of ongoing harassment and discrimination.

15. On April 11, 2016, Eric Mertens, the Director of Engineering and Operations, told Plaintiff that Maria Law, Human Resources and Logistics Manager, and Amir Stamper, Sales Manager, notified him that the Plaintiff arrives late to work and leaves early. Mr. Mertens stated that he is not a "stickler" because the Plaintiff got her work done, but admitted that the Plaintiff has "Eagle Eyes" on her and that she needs to stick to her schedule.

16. The Plaintiff responded that she was being harassed and discriminated against. She reminded Mr. Mertens they had agreed upon her schedule being 9 a.m. to 5 p.m.

17. Despite this conversation, Defendant continued to discriminate against Plaintiff and harass her regarding her schedule.

18. In September 2017, Defendant continued to target Plaintiff for allegedly leaving a minute or two early and for alleged excessive cell phone use. Non-Jamaican, non-black, younger employees arrived to work later than Plaintiff, left earlier than Plaintiff, and used their cell phones more frequently than Plaintiff, but the Defendant did not reprimand them.

19. Plaintiff used her cell phone with headphones in order to listen to music while doing her work, which was not against Defendant's policy.

20. Non-Jamaican, non-black, younger employees used their cell phones to listen to music but also to make personal calls during working hours, but the Defendant did not reprimand them.

21. Mr. Stamper followed the Plaintiff around virtually every time she left her desk. He did not follow non-Jamaican, non-black, younger employees.

22. In November 2017, Mr. Mertens held a meeting with the Plaintiff during which he questioned whether she wished to remain employed with Defendant because she didn't "look happy." Mr. Mertens stated that Thierry Sparfel, the President, complained that the Plaintiff "does not smile enough and does not say good morning to him when she comes in." Mr. Mertens said, "you have a pretty smile and you should use it more often. Even if you don't feel like it, just fake a smile and try to look happy." The Plaintiff told Mr. Mertens that she says "good morning" to each person she sees and that, perhaps, Mr. Sparfel did not hear her. She asked if she was required to specifically walk to Mr. Sparfel's office to say good morning.  Mr. Merten told her that she was required to do so.  Non-Jamaican, non-black, younger employees were not required to do this.

23. Not satisfied with a greeting and a smile, in March 2018, Mr. Mertens told the Plaintiff that she was required to stop and say goodbye to Mr. Sparfel on days she was leaving early, even if Mr. Mertens had already given her permission to leave early.  Non-Jamaican, non-black, younger employees were not required to do this.

24. In May 2018, Mr. Mertens told the Plaintiff that she did not give eye contact to Mr. Sparfel when she spoke to him and accused the Plaintiff of turning her back to Mr. Sparfel. Mr. Mertens did not identify a specific date or incident on which this occurred. Again, non-Jamaican, non-black, younger employees were not subjected to this micromanagement.

25. Non-Jamaican, non-black, younger employees were permitted to work from home, were not required to smile and greet Mr. Sparfel, were not required to say goodbye to Mr. Sparfel, and their comings and goings were not micromanaged. Those employees who were allowed to work from home were not always working during those days, and even responded to requests for work that they were not home at the time despite the fact that they were supposed to be working from home. These non-Jamaican, non-black, younger employees were not reprimanded for this. On September 12, 2018, Mr. Mertens assigned a task to the Plaintiff. The Plaintiff attempted to complete the task but Mr. Mertens hovered over her and waited for her to complete the task. The Plaintiff told Mr. Mertens that the task may take some time and that he did not need to wait with her. In response to this, Mr. Mertens pulled the Plaintiff in the warehouse to speak privately. Mr. Mertens told Plaintiff that she had "too much attitude" and again questioned if she wanted to remain employed with Defendant. Plaintiff responded that she wanted to remain employed and asked for a specific example regarding the "attitude" that she allegedly showed to Mr. Mertens. Instead of explaining the issues with Plaintiff's alleged "attitude," Mr. Mertens put up his hand in the air to block the Plaintiff's face and said, "I do not want to hear it." Then Mr. Mertens left the room.

26. In September 2018, Ms. Law and Mr. Mertens met with Roman Sparfel, Technical Manager, and Christian Rodriguez, Technician, both non-Jamaican, non-black, younger employees, in order to discipline because they did not pass or refused to do a drug test for a

customer. Roman Sparfel raised his voice and then stormed out, slamming drawers in his desk. Both he and Mr. Rodriguez left the building. Mr. Rodriguez did not return back to work for a week. Mr. Sparfel received suspension without pay and Mr. Rodriguez received suspension with pay. They both returned to work in a matter of weeks. Defendant allowed these non-Jamaican, non-black, younger employees to return to work despite their outbursts and job abandonment, but Defendant harassed Plaintiff for arriving a minute or two late or leaving a minute or two early or for having some mysterious and unspecified "attitude" and not "smiling" enough.

27. In September 2018, Mr. Mertens requested that the Plaintiff train Dijana Josaic, another technician, on the VidCAD program. Ms. Josaic was originally hired in May 2018 to work as a technician installing and programming projectors and other video systems. Ms. Josaic is 23 years old and from Serbia. The Defendant paid for Ms. Josiac's apartment. Mr. Mertens stated that Ms. Josaic would work in the field as a project manager while the Plaintiff would complete the drawings and changes for the projects and systems. Upon information and belief, Defendant planned on terminating Plaintiff and replacing her with Ms. Josaic.

28. In September 2018, Ms. Josaic was using the office printers and the large plotter to print large animal rights posters in color. Mr. Stamper saw Ms. Josaic doing this and did notreprimand her. Instead, the next morning, Mr. Stamper sent an email to everyone stating that the printers should not be used for personal purposes. Luis Sierra, a technician, asked Mr. Stamper why did he not speak to Ms. Josaic directly or report it to Mr. Mertens. Mr. Stamper replied, "I do not want to single anyone out." Yet, because the Plaintiff was a Jamaican, 40-year-old black woman, she was always singled out and discriminated against.

29. Ms. Josaic would sometimes come to work late but Mr. Stamper never reported it to Mr. Mertens. Ms. Josaic also often did personal things during work hours and Mr. Stamper would see it and not report it.

30. On September 27, 2018, the Plaintiff was terminated by Mr. Mertens and Ms. Law. Mr. Mertens stated that business was slow and they had to do cut backs. Mr. Mertens stated they did not have many projects, which is untrue. Mr. Mertens sent an email on Wednesday, October 3rd at 5:34 p.m. to all employees providing a list of all upcoming projects for October to December. He listed over six projects, all of which required. drawings, quotes, and final installations. The drawings, quotes, and final installations would have been within Plaintiff's job duties and responsibilities. Therefore, Defendant's claim that business was slow and that they did not have enough projects was merely a pretext.

31. Plaintiff has engaged the undersigned attorneys to prosecute her claims and is entitled to recover her attorney's fees from Defendant pursuant to statute.

## COUNT I: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Discrimination on the Basis of Sex)**

32. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 31, inclusive, as though same were fully re-written here.

33. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, §§703(a), 706(a), and 706(g) for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was terminated on the basis of her sex, female.

34. The Manager and Director, at all times relevant, were acting within the course and scope of their employment for Defendant.

35. Because Plaintiff is a woman, she was discriminated against and continuously micromanaged, singled out, and followed around.

36. Because Plaintiff is a woman, she was told that she did not smile enough and should smile more because she has a pretty smile.

37. Because Plaintiff is a woman, she was told she needed to make eye contact with Mr. Sparfel.

38. Because Plaintiff is a woman, she was held to a different standard than male employees. Upon information and belief, male employees are not micromanaged, singled out, and followed around.

39. Upon information and belief, male employees are not told to smile more.

40. Upon information and belief, male employees are not told to make eye contact.

41. Upon information and belief, male employees are not held to the same standard as female employees.

42. Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 USC §2000e2(a)(1) which resulted in Plaintiff, HALEY BARNETT DACOSTA, being discriminated against.

43. Plaintiff is entitled to such affirmative relief as may be appropriate, including but not limited to, lost wages, benefits, and compensation for emotional distress pursuant to the provisions of Title VII of the Civil Rights Act of 1964, §706(g).

44.     Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under Title VII of the Civil Rights Act of 1964. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in an amount to be determined at trial.

WHEREFORE, Plaintiff hereby requests that this Honorable Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including back pay, front pay, injury to her professional reputation, punitive damages, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with The Civil Rights Act of 1964, §706(g); attorney's fees, costs, together with interest thereon, and such other relief as the Court deems just and appropriate.

### **COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992**
**(Discrimination on the Basis of Sex)**

45. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 31, inclusive, as though same were fully re-written here.

46. The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

47. The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved.

48. Plaintiff is a woman, and therefore a member of a protected class.

49. Because Plaintiff is a woman, she was discriminated against and continuously micromanaged, singled out, and followed around.

50. Because Plaintiff is a woman, she was told that she did not smile enough and should smile more because she has a pretty smile.

51. Because Plaintiff is a woman, she was told she needed to make eye contact with Mr. Sparfel.

52. Because Plaintiff is a woman, she was held to a different standard than male employees.

53. Upon information and belief, male employees are not micromanaged, singled out, and followed around.

54. Upon information and belief, male employees are not told to smile more.

55. Upon information and belief, male employees are not told to make eye contact.

56. Upon information and belief, male employees are not held to the same standard as female employees.

57. At all relevant and material times, Defendant failed to comply with the FCRA.

58. The discrimination of Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's sex.

59. At all times relevant, including at the time of the unlawful and discriminatory treatment, Defendant was aware that Plaintiff was a woman.

60. At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

61. The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

62. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her sex in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees.

63. Defendant's treatment of Plaintiff was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because she was a woman, in violation of the FCRA.

64. Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff's sex.

65. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her sex. The discrimination on the basis of sex constitutes unlawful discrimination.

66. As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress, liquidated damages, punitive damages, prejudgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT III: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Discrimination on the Basis of Race)**

67. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 31, inclusive, as though same were fully re-written here.

68. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, §§703(a), 706(a), and 706(g) for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was terminated on the basis of her race, black.

69. The Manager and Director, at all times relevant, were acting within the course and scope of their employment for Defendant.

70. Because Plaintiff is black, she was micromanaged, singled out, and followed around. Meanwhile Ms. Josaic who is white and from Serbia was allowed to do what she liked while working.

71. Because Plaintiff is black, she was not allowed to work some days from home. However, non-black employees were able to work from home two days per week.

72. Upon information and belief, non-black employees are not micromanaged, singled out, and followed around.

73. Upon information and belief, non-black employees are allowed flexibility in their schedules and can work from home a few days per week.

74. Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 USC §2000e2(a)(1) which resulted in Plaintiff, HALEY BARNETT ACOSTA, being discriminated against.

75. Plaintiff is entitled to such affirmative relief as may be appropriate, including but not limited to, lost wages, benefits, and compensation for emotional distress pursuant to the provisions of Title VII of the Civil Rights Act of 1964, §706(g).

76. Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under Title VII of the Civil Rights Act of 1964. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in an amount to be determined at trial.

WHEREFORE, Plaintiff hereby requests that this Honorable Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including back pay, front pay, injury to her professional reputation, punitive damages, and emotional pain and

suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with The Civil Rights Act of 1964, §706(g); attorney's fees, costs, together with interest thereon, and such other relief as the Court deems just and appropriate.

### COUNT IV: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Discrimination on the Basis of Race)**

77. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 31, inclusive, as though same were fully re-written here.

78. The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

79. The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved.

80. Plaintiff is black, and therefore a member of a protected class.

81. Because Plaintiff is black, she was micromanaged, singled out, and followed around. Meanwhile Ms. Josaic who is white and from Serbia was allowed to do what she liked while working.

82. Because Plaintiff is black, she was not allowed to work some days from home. However, non-black employees were able to work from home two days per week.

83. Upon information and belief, non-black employees are not micromanaged, singled out, and followed around.

84. Upon information and belief, non-black employees are allowed flexibility in their schedules and can work from home a few days per week.

85. At all relevant and material times, Defendant failed to comply with the FCRA.

86. The discrimination of Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's race.

87. At all times relevant, including the time of the unlawful and discriminatory treatment, Defendant was aware that Plaintiff was black.

88. At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

89. The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

90. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her race in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees.

91. Defendant's treatment of Plaintiff was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because she was black, in violation of the FCRA.

92. Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff's race.

93. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her race.  The discrimination on the basis of race constitutes unlawful discrimination.

94. As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress, liquidated damages, punitive damages, prejudgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

### COUNT V: VIOLATION OF THE ADEA
**(Discrimination on the Basis of Age)**

95. Plaintiff realleges and readopts the allegations contained in paragraphs 1 through 31 inclusive, as though same were fully re-written here.

96. Plaintiff was forty (40) years old when she began training Ms. Josaic, who was 23 years old at the time. Unbeknownst to the Plaintiff, she was training Ms. Josaic as her replacement.

97. Ms. Josaic was not followed around, singled out, or micromanaged.

98. Ms. Josaic was permitted to do non-work related things on her computer, including but not limited to printing color posters for personal use, and she was not reprimanded.

99. Ms. Josaic sometimes arrived late to work and Mr. Stamper saw it but did not report it or discipline her.

100.    38. Plaintiff was eventually replaced by Ms. Josaic and terminated only because of her age, and would not have been terminated, but for her age.

101.    Defendant did not have a legitimate, non-discriminatory, reason for terminating Plaintiff.

102.    Plaintiff was replaced by an employee who was substantially younger than Plaintiff.

15

103. Plaintiff's job duties were taken over by an employee significantly younger than Plaintiff who was less qualified than Plaintiff.

104. Plaintiff had more seniority than the employee who took over her primary job duties.

105. Defendant's termination of Plaintiff was willful and intentional, and constitutes a reckless disregard for Plaintiff's rights.

106. Defendant had no good faith basis for terminating Plaintiff based on her age, and Plaintiff is entitled to liquidated damages based on these actions.

107. Prior to terminating Plaintiff, Defendant did not consult with the EEOC, Department of Labor, or legal counsel to determine whether Plaintiff's termination, based on her age, was in compliance with the ADEA.

WHEREFORE, Plaintiff prays that this Court will issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of Plaintiff's rights under the ADEA; require that Defendant make Plaintiff whole for her losses suffered as a result of the discrimination through reinstatement, or, if that is not practical, through an award of front pay; grant Plaintiff a judgment against Defendant for all lost wages and compensatory damages, including liquidated damages; award Plaintiff her reasonable attorney's fees and litigation expenses against Defendant pursuant to the ADEA and provide any additional relief that this Court deems just.

### COUNT VI – VIOLATION OF THE FCRA
**(Age discrimination)**

108. Plaintiff realleges and adopts the allegations contained in paragraphs 1 through 31, inclusive, as though same were fully re-written here.

109. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against age discrimination under the Florida Civil Rights Act, Chapter 760, FLA. STAT.

110. The discrimination to which Plaintiff was subjected was based on her age.

111. Plaintiff was fired only because of her age, and would not have been fired, but for her age.

112. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

113. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

114. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 760.11(5), FLA. STAT.

115. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant which have caused, and continue to cause, irreparable harm.

WHEREFORE, Plaintiff prays that this Court will issue a declaratory judgment that the discrimination/harassment against Plaintiff by Defendant was a violation of Plaintiff's rights under the FCRA; requiring that Defendant make Plaintiff whole for her losses suffered as result of the discrimination through reinstatement, or, if that is not practical, through an award of front pay; grant Plaintiff a judgment against Defendant for damages, including punitive damages; award Plaintiff her reasonable attorney's fees and litigation expenses against Defendant pursuant to 760.11(5), FLA. STAT; and provide any additional relief that this Court deems just.

### COUNT VII: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (Retaliation)

116.    Plaintiff incorporates herein the allegations contained in paragraphs 1 through 31, inclusive, as though same were fully re-written here.

117.    Plaintiff had the right to voice her grievances to her Manager and Director that she was being discriminated against.

118.    When Defendant terminated the Plaintiff by claiming that business was "slow" and they had to do "cutbacks", it retaliated against her for exercising her rights.

119.    The Director and Human Resources representative, at all times relevant hereto, acted on behalf of the Defendant, and acted within the scope of their duties.

120.    Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII of the Civil Rights Act of 1964.

121.    Upon information and belief, Defendant's unlawful employment practices were done with malice or with reckless indifference to the protected rights of Plaintiff.  Defendant, by and through its officers and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of those in direct contact with Plaintiff. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum to be determined at trial.

122.    Plaintiff has engaged the undersigned attorneys to prosecute her claim and is entitled to recover her attorney's fees from Defendant pursuant to statute.

WHEREFORE, Plaintiff hereby requests that this Court: (a) declare that Defendant's termination of Plaintiff was in violation of Title VII of the Civil Rights Act of 1964; (b) grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's termination of Plaintiff in an amount to be determined at trial and in accordance with

Title VII of the Civil Rights Act of 1964; (c) award Plaintiff pre-judgment and post-judgment interest; (d) award Plaintiff punitive and compensatory damages as permitted by law; (e) award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to statute; and (f) grant Plaintiff such other and further relief as the Court deems appropriate.

### **COUNT VIII: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992**
**(Retaliation)**

123.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 31 inclusive, as though same were fully re-written here.

124.     Plaintiff had the right to voice her grievances to her Manager and Director that she was being discriminated against.

125.     When Defendant terminated the Plaintiff by alleging that business was "slow" and they had to do "cutbacks", it retaliated against her for exercising her rights.

126.     The Director and Human Resources representative, at all times relevant hereto, acted on behalf of the Defendant, and acted within the scope of their duties.

127.     Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA, Chapter 760.

128.     Upon information and belief, Defendant's unlawful employment practices were done with malice or with reckless indifference to the protected rights of Plaintiff.  Defendant, by and through its officers and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of those in direct contact with Plaintiff. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum to be determined at trial.

129.	Plaintiff has engaged the undersigned attorneys to prosecute her claim and is entitled to recover her attorney's fees from Defendant pursuant to statute.

WHEREFORE, Plaintiff hereby requests that this Court: (a) declare that Defendant's termination of Plaintiff was in violation of the FCRA; (b) grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's termination of Plaintiff in an amount to be determined at trial and in accordance with the FCRA; (c) award Plaintiff pre-judgment and post-judgment interest; (d) award Plaintiff punitive and compensatory damages as permitted by law; (e) award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and (f) grant Plaintiff such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 22nd day of May, 2019.

By: /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff